IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

MARCHANDA FRANKS, et al.,  )
          )
  Plaintiffs,     )
          )
v.          )  CIVIL ACTION NO.  2:04CV1095-W
          )      (WO)
STUDIO PLUS PROPERTIES, INC., )
          )
  Defendant.    )

**MEMORANDUM OPINION AND ORDER ON MOTION**

Plaintiffs Marchanda Franks, Tanya Hayes and Hayes' three minor children bring this action against defendant Studio Plus Properties, Inc.[1]  They allege that, on or about August 11, 2004, they were asleep in their room when they were awakened by a fire alarm that set off the sprinkler system – although there was no fire at Studio Plus – drenching them and their property.  Plaintiffs experienced "anxiety, panic, and fear for their lives." Plaintiff Tanya Hayes suffered an asthma attack and was treated at the emergency room. (Complaint, ¶¶ 9-14).  Plaintiffs further allege that two days before this incident, other Studio Plus guests had complained to defendant's staff of a "sulfuric, fire, or otherwise uncommon smell in the building."  (Id., ¶ 15).  Plaintiffs assert state law claims of negligence, gross negligence, wantonness, negligent training and supervision, and

---

[1] Plaintiffs have not moved to substitute any real party for the fictitious defendants named in the style of the complaint.  The fictitious defendants are, therefore, due to be dismissed.

premises liability. This court has diversity jurisdiction over this matter. (See Doc. # 13, Order denying motion to remand). This action is presently before the court on the motion for summary judgment filed by defendant on August 30, 2005 (Docs. # 15, 16). Although plaintiffs were given an opportunity to do so (see Docs. # 11, 18), they did not respond to the motion for summary judgment.

## BACKGROUND[2]

Plaintiffs checked into the Studio Plus extended stay hotel on Carmichael Road in Montgomery, Alabama, on August 1, 2005. Plaintiffs were in the process of moving from one house to another. They were in Room 320 for the duration of their stay. Neither the fire alarm nor the sprinkler system were activated at any time during plaintiffs' stay prior to the early morning hours of August 12, 2004. At about midnight to 1:00 a.m. on August 12, 2004, Tanya Hayes woke to the sound of an alarm. Immediately thereafter, the sprinkler activated. Plaintiffs were frantic and screaming and went into the hallway. A few other guests had opened their doors, and plaintiffs realized that their room was the only room in which the sprinklers were on. Franks was embarrassed because she was in her pajamas. Franks and her daughter, plaintiff Tanya Hayes, kept going back into the room to try to

---

[2] As it is required to do, the court has viewed the evidence presented on the motion for summary judgment in the light most favorable to the plaintiff. Welch v. Celotex Corp., 951 F.2d 1235, 1237 (11th Cir. 1992). The court considers any objections not raised to the use or admissibility of the evidence to be waived for purposes of this motion. Davis v. Howard, 561 F.2d 565, 570 (5th Cir. 1977).

find something to put on, since all of the plaintiffs were in their nightclothes, and to try get their important papers out. They were ankle-deep in water. The fire department arrived, but could not cut the sprinkler system off. The sprinklers were running for twenty to thirty minutes. Plaintiff Hayes had an asthma attack and was taken by ambulance to the hospital. Hayes was embarrassed that everyone had seen her having an asthma attack. (Franks depo., pp. 14-21; Tanya Hayes depo., pp. 32-41). Plaintiffs' personal property was damaged by the water. (Hayes' depo., pp. 53-55; Franks depo., pp. 48-51).

For three days before the incident, plaintiffs noticed a strong odor in the hallways and room that was "a bit like sulphur." The odor was also in the lobby. Franks and Tanya Hayes and two of the minor children are asthmatics, and the odor was making Tanya Hayes ill. Tanya Hayes complained about the odor, and was told that it was being caused by the people who were changing locks on all of the doors. (Franks depo., pp. 21-22; Tanya Hayes' depo., pp. 20-23). The odor was still in the hotel on the evening that the sprinkler system discharged. (Franks depo., p. 39).

The sprinkler system at the Studio Plus hotel can be activated in only one way. Each sprinkler head contains a small, liquid-filled glass element. If this element is broken – either because it is exposed to a significant level of heat or because it is struck or impacted with sufficient force – the sprinkler head will activate. Exposure to fumes or smoke will not cause the activation of the sprinkler system. The activation of either the fire

alarm system or the smoke detectors located in the rooms also will not cause the sprinkler system to activate.   If the sprinkler system is activated, however, the fire alarm system will then activate and send out appropriate calls to local law enforcement and fire departments. (Larson aff., pp. 2-3, 5).   The only previous discharge of the sprinkler system since defendant has owned the property occurred on October 27, 2003, when a guest activated the sprinkler head while removing a clothes hanger from the sprinkler head.  (Id., p. 5 and Exhibit 5).

Defendant contracted with the sprinkler contractor that installed the system at the Carmichael Road Studio Plus property to inspect and maintain the system.   The contractor inspected the sprinkler system on February 9, 2004 and on July 29, 2004, two weeks before the August 12, 2004 incident.   The inspector suggested the installation of additional sprinkler heads, but did not note any defects in the existing system.  (Larson aff., p. 4 and Exhibits 1 and 2).   The Montgomery Fire Department inspected the property on March 5, 2004.   The two defects noted – one involving a non-working emergency light and another involving wiring of a phone line into the fire alarm system – did not have anything to do with activation of the fire alarm or sprinkler system and were corrected by March 26, 2004. (Id., p. 4 and Exhibit 3). Carr Electric Company inspected the fire alarm system on August 12, 2004 after the incident, and determined that the system was working properly.  (Id., pp. 4-5 and Exhibit 4; see also McCree aff.).   The manager of the Carmichael Road Studio Plus

had received no complaints from plaintiffs or any other residents regarding problems with the fire alarm or sprinkler system prior to August 12, 2004.  (McCree aff.).

**THE SUMMARY JUDGMENT STANDARD**

A party seeking summary judgment bears the initial burden of demonstrating to the court the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions that it believes show an absence of any genuine issue of material fact.  Hairston v. Gainesville Publishing Co., 9 F.3d 913 (11th Cir. 1993).  For issues on which the non-movant bears the burden of proof at trial, "the moving party is not required to support its motion with affidavits or other similar material negating the opponent's claim in order to discharge this initial responsibility.  Instead, the moving party simply may show [ ] – that is, point[ ] out to the district court – that there is an absence of evidence to support the non-moving party's case."  Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115-16 (11th Cir. 1993)(quoting U.S. v. Four Parcels of Real Property, 941 F.2d 1428, 1437-38 (11th Cir. 1991)(*en banc*)).

In Celotex Corp. v. Catrett, 477 U.S. 317 (1986), the Court held that if a party opposing summary judgment "fails to make a showing sufficient to establish the existence of an element essential to their party's case, and on which their party will bear the burden of proof at trial," summary judgment shall be granted.

> [W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue . . . Rule 56(e) . . . requires the nonmoving party to go

5

beyond the pleadings and by . . . affidavits, or by the "depositions, answers
to interrogatories, and admissions on file," designate "specific facts showing
that there is a genuine issue for trial. . . We do not mean that the nonmoving
party must produce evidence in a form that would be admissible at trial in
order to avoid summary judgment. . . . Rule 56(e) permits a proper summary
judgment motion to be opposed by any of the kinds of evidentiary materials
listed in Rule 56 except the mere pleadings themselves. . . ."

Id. at 324.

For summary judgment purposes, an issue of fact is "material" if it is a legal element
of the claim, as identified by the substantive law governing the case, such that its presence
or absence might affect the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S.
242, 248 (1986). An issue of fact is "genuine" if the record taken as a whole could lead a
rational trier of fact to find for the nonmoving party. Matsushita Electrical Industrial
Company v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The court must view the
evidence, and all factual inferences properly drawn from the evidence, in the light most
favorable to the nonmoving party. Welch v. Celotex Corp., 951 F.2d 1235, 1237 (11th Cir.
1992); Rollins v. TechSouth, Inc., 833 F.2d 1525, 1528 (11th Cir. 1987). It is improper for this
court to weigh conflicting evidence or make credibility determinations; instead, "the
evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn
in his favor." Anderson, 477 U.S. at 255. Where a reasonable fact finder may "draw more
than one inference from the facts, and that inference creates a genuine issue of material
fact, then the court should refuse to grant summary judgment." Barfield v. Brierton, 883

6

F.2d 923, 933-34 (11th Cir. 1989) (citation omitted).

## DISCUSSION

Under Alabama law, "'[t]he owner of premises owes a duty to business invitees to use reasonable care and diligence to keep the premises in a safe condition, or, if the premises are in a dangerous condition, to give sufficient warning so that, by the use of ordinary care, the danger can be avoided.'" K-Mart Corporation v. Bassett, 769 So.2d 282, 284-85 (Ala. 2000)(citation omitted).

> This duty does not, however, convert a premises owner into an insurer of its invitees' safety. Moreover, the mere fact that a business invitee is injured does not create a presumption of negligence on the part of the premises owner. Rather, a premises owner is liable in negligence only if it "fail[s] to use reasonable care in maintaining its premises in a reasonably safe manner."

Id. (citations omitted). To prevail in the present case, plaintiff must present evidence that Studio Plus "failed to use reasonable care to maintain [the sprinkler and/or fire alarm systems] in a reasonably safe condition . . . and that [defendant's] failure proximately caused the [sprinkler and/or fire alarm system] to malfunction in such a way as to injure [them]." See id. at 285. Before defendant may be held liable for plaintiffs' injuries, plaintiffs must prove that defendant had actual or constructive knowledge of the defect in the premises. See Fowler v. CEC Entertainment, 2005 WL 927507, *4 (Ala. Civ. App. Apr. 22, 2005)(quoting Dolgencorp, Inc. v. Hall, 890 So.2d 98, 101 (Ala. 2003) and Hale v. Sequoyah Caverns & Campgrounds, Inc., 612 So.2d 1162, 1164 (Ala. 1992)).

7

Studio Plus argues that it is entitled to summary judgment on plaintiffs' claims because plaintiffs have failed to produce any evidence to indicate what caused the system to malfunction or of any failure on defendant's part to maintain the premises in a reasonably safe condition.   Defendant has presented evidence that the fire alarm and sprinkler systems were inspected three times in 2004 prior to the incident complained of by plaintiffs, including an inspection two weeks before the incident, and that there were no deficiencies noted that relate to the activation of the systems in this case.  (Exhibits 1-3 to Larson aff.).   Additionally, no problems or defects were found in an inspection of the fire alarm system conducted immediately after the incident at issue.  (Exhibit 4 to Larson aff.). Further, the manager of the Carmichael Road hotel testified that, prior to August 12, 2004, she had not received any complaints from the plaintiffs or any other residents regarding any problems with the fire alarm or sprinkler systems, she was not aware of any defects or problems with the sprinkler system, and there had been no previous incidents of unexplained discharges of sprinkler heads at the hotel.  (McCree aff.).

There is no evidence of record to indicate what caused the activation of the fire alarm and sprinkler systems in plaintiffs' room.  Plaintiffs' speculation that the activation may have been caused by the strong odor in the hotel in the days preceding the incident does not satisfy their burden on the present motion of designating "specific facts showing that there is a genuine issue for trial" (see Celotex, supra, 477 U.S. at 324) regarding

whether there was a defect in the premises and whether any such defect proximately caused their injury. There is no evidence that Studio Plus negligently failed to maintain the fire alarm or sprinkler system in a reasonably safe condition or that Studio Plus had either actual or constructive knowledge of any defect in the system. Plaintiffs have not demonstrated any breach of duty on defendant's part which proximately caused their injury.

Additionally, plaintiffs have not met their burden of demonstrating the existence of a genuine issue of material fact on their claim of negligent supervision and training. In Big B, Inc. v. Cottingham, 634 So.2d 999 (Ala. 1993), the Alabama Supreme Court explained the basis for the tort of negligent supervision:

> In the master and servant relationship, the master is held responsible for his servant's incompetency when notice or knowledge, either actual or presumed, of such unfitness has been brought to him. Liability depends upon its being established by affirmative proof that such incompetency was actually known by the master or that, had he exercised due and proper diligence, he would have learned that which would charge him in the law with such knowledge.

Id. at 1003 (quoting Thompson v. Havard, 235 So.2d 853, 858 (1970)). To establish a claim of negligent supervision or training, plaintiffs must first demonstrate wrongful conduct by an agent of defendant. Stevenson v. Precision Standard, Inc., 762 So.2d 820, 825 (Ala. 1999). Defendant argues that there is no evidence of negligence on the part of any Studio Plus employee or representative or that any employee or representative was insufficiently

9

trained or supervised.  As noted above, plaintiffs have not demonstrated any breach of duty proximately causing their injury.

Accordingly, defendant is entitled to summary judgment on all of plaintiffs' claims.[3]

## CONCLUSION

For the foregoing reasons, it is

ORDERED that defendants' motion for summary judgment (Doc. # 15) and defendants' motion for entry of summary judgment (Doc. # 19) are GRANTED.  A separate judgment will be entered.

DONE, this 2nd day of November, 2005.


/s/ Susan Russ Walker
SUSAN RUSS WALKER
UNITED STATES MAGISTRATE JUDGE

---

[3] See also Rule 16 order entered on January 6, 2005, Section 6 ("The failure to file a response to any motion – either dispositive or non-dispositive – within the time allowed by the court shall indicate that there is no opposition to the motion.").